# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. AGUIRRE,<br><br>                   Plaintiff,<br><br>    v.<br><br>U.S. NUCLEAR REGULATORY COMMISSION,<br><br>                   Defendant. | Case No. 19-cv-495-BAS-BLM<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 10]** |

     Plaintiff Michael Aguirre filed a complaint against Defendant United States Nuclear Regulatory Commission ("NRC"). In sum, in December 2018, Plaintiff requested two productions of documents from the NRC pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff now seeks a declaratory judgment that the NRC's failure to respond to his requests was unlawful, an order compelling the NRC to release the documents, and attorney's fees. ("Compl.," ECF No. 1.)

## I.    FACTUAL BACKGROUND

     Plaintiff alleges there is a "pattern of safety violations" occurring on a site that stores nuclear waste in San Diego, California. (Compl. ¶ 4.) Plaintiff alleges the NRC, the agency in charge of regulating the storage of the nuclear waste, is not properly inspecting the site and is not appropriately responding to the violations. (*Id.*

¶¶ 3, 5, 14.) Therefore, on December 21, 2018, and December 22, 2018, Plaintiff emailed two FOIA requests to the NRC. (*Id.* ¶¶ 49, 50.) The NRC assigned the requests the tracking numbers NRC-2019-000154 and NRC-2019-000155 (hereinafter, "the '154 request" and "the '155 request"). In the '154 request, Plaintiff sought "the writings prepared from the NRC team interview of the licensee (SCE) and contractor (Holtec) staff involved or present during the August 3, 2018, misalignment incident" and "the records the NRC reviewed related to dry cask storage operations." (Exhibit 1 to Declaration of Tina Ennis, ECF No. 10-2.) In the same email, Plaintiff stated, "[if] costs for producing these writings exceeds $1500 please notify me, otherwise please proceed." (*Id.*) In the '155 request, Plaintiff sought "any writings showing Southern California Edison (SCE) reported to the Nuclear Regulatory Commission, SCE's discovery of broken shim pin(s) in an empty cannister before it was loaded at the San Onofre ISFSI in February 2018." (Exhibit 2 to Declaration of Tina Ennis.) In the same email, Plaintiff requested he be notified "if the fee for the writins [sic] will exceed $1500." (*Id.*)

On January 30, 2019, the NRC sent two letters to Plaintiff, apologizing for the delay in acknowledging both requests. (Exhibit 3 to Declaration of Tina Ennis.) Both letters stated that the estimated completion date for the requests was February 28, 2019. Both letters noted that Plaintiff may be charged appropriate fees for search and review time. (*Id.*)

On February 5, 2019, Tina Ennis, a FOIA analyst with the NRC, emailed Plaintiff regarding the '155 request and stated that because Plaintiff was determined to be a "commercial use" requester, he was responsible for search and review costs. (Exhibit 4 to Declaration of Tina Ennis.) Ms. Ennis acknowledged that Plaintiff agreed to pay up to $1500 but asked Plaintiff to complete the attached official form. (*Id.*) Ms. Ennis specifically noted that the NRC would not process Plaintiff's request without advance payment, and that if Plaintiff did not respond within 15 days, his request would be closed. (*Id.*)

A few days later, Plaintiff's law partner Maria Severson sent a letter to Ms. Ennis, titled an "appeal and request to expedite" Plaintiff's two requests. (Exhibit 5 to Declaration of Tina Ennis.) In the letter, Ms. Severson threatened to file a complaint if she was not assured that Plaintiff's requests would be expedited. (*Id.*) The letter does not mention the requested advanced payment. Ms. Ennis responded by a short email that said an "acknowledgment letter" of the appeal was attached. (Exhibit 6 to Declaration of Tina Ennis.) The Court sees no such letter in the parties' exhibits. In her declaration, Ms. Ennis says this letter explained that the NRC denied the request for expedited treatment. (Ennis Declaration ¶ 7.) The letter has not been provided, so the Court cannot confirm its contents. But, it is logical to assume that Plaintiff's requests were not in fact expedited, or the present case would not exist.

On February 14, 2019, Ms. Ennis emailed Plaintiff regarding the '154 request. (Exhibit 7 to Declaration of Tina Ennis.) Ms. Ennis asked Plaintiff to

> please clarify what records you are looking for as it pertains to "the records the NRC reviewed related to dry cask storage operations". Should the term "operations" be considered in the narrow sense (actions related to moving the canister from point A to point B), or all-encompassing (management controls, design control, training, health physics, etc)? This will help us in determinating [sic] the fees related to this request.

(*Id.*) There is no evidence Plaintiff responded to this email.

On February 22, 2019, another FOIA officer sent a letter to Plaintiff notifying him that his two requests were aggregated for purposes of fees. (Exhibit 8 to Declaration of Tina Ennis.) The letter referenced the prior February 5 letter sent to Plaintiff regarding the advanced payment, as well as the February 14 email regarding the request for clarification. (*Id.*) The officer noted that because the NRC had not received the payment or the clarification, it was administratively closing both requests. (*Id.*) A few weeks later, Plaintiff filed the present case.

II. PROCEDURAL BACKGROUND

Defendant moves to dismiss Plaintiff's complaint, arguing that Plaintiff failed

to exhaust the administrative remedies for both FOIA requests before filing his complaint. ("Mot.," ECF No. 10.) Although not clearly specified in the Motion, it appears that the Motion was brought under Federal Rule of Civil Procedure 12(b)(6). (*See id.* at 6 ("Defendant respectfully moves for dismissal of the complaint for failure to state a claim, based on lack of exhaustion of administrative remedies.").) Defendant attached a declaration by Tina Ennis and eight exhibits to its Motion. (ECF No. 10-2.) Defendant did not explain why it believed the Court could consider these exhibits at the motion to dismiss stage. Therefore, the Court converted the Motion to a motion for summary judgment. (ECF No. 15.) The Court permitted both parties to submit any further material in support of the Motion or Opposition and provided separate deadlines for each party. Defendant did not file anything by its deadline, and Plaintiff submitted further points and authorities along with a declaration by Plaintiff and three new exhibits, (ECF Nos. 16, 16-1).[1]

The Court held oral argument on this Motion on February 18, 2020. For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, (ECF No. 10).

## III. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine

---

[1] This supplemental response filed by Plaintiff details issues that have arisen since the filing of the complaint. These documents are irrelevant to the issue before the Court: whether Plaintiff exhausted his administrative remedies before filing the present complaint. Defendant moves ex parte for leave to file a supplemental reply to respond to Plaintiff's supplemental response. (ECF No. 17.) Because the Court finds Plaintiff's supplemental response is largely irrelevant, it need not receive a response by the NRC. The Court therefore **DENIES** the NRC's ex parte motion, (ECF No. 17).

Plaintiff also requests the Court take judicial notice of various documents. The documents relate to the merits of Plaintiff's FOIA requests. (ECF No. 11-2.) Plaintiff states the documents should be noticed because "it is critical that the Court understand the context" behind the requests and the documents "explain why the NRC summarily dismissed" Plaintiff's administrative appeal. (*Id.* at 1.) The Court finds the documents are not relevant to the Court's determination, so it **DENIES** Plaintiff's requests for judicial notice.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## IV. ANALYSIS

"FOIA gives individuals a judicially-enforceable right of access to government agency documents." *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016). FOIA provides, among other things, that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Because FOIA cases rarely involve material factual disputes, they "typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 97 (D.D.C. 2009); *see Shannahan v. IRS*, 637 F. Supp. 2d 902, 912 (W.D. Wash. 2009).[2]

The NRC moves for summary judgment on the ground that Plaintiff has failed to exhaust administrative remedies for both the '154 and '155 FOIA requests.

### A. Waiver of Exhaustion Due to NRC's Delay

Plaintiff disputes the assertion that he did not exhaust his administrative remedies. But he also argues that if he did not exhaust, the requirement is waived because of when the NRC responded to Plaintiff's requests.

Under FOIA, when a member of the public makes a request for government records, the agency must, "within 20 days (excepting Saturdays, Sundays, and legal public holidays) after receipt of any such request[,]" determine whether to comply

---

[2] Normally, "the standard for summary judgment in a FOIA case requires a two-stage inquiry." *L.A. Times Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880, 893 (C.D. Cal. 2006). The court's first step in this inquiry is to determine "whether the agency has met its burden of proving that it fully discharged its obligations under FOIA." *Id.* Here, the agency's argument is that it was not required to discharge its obligations, thus, the Court does not even reach the first step and does not follow the typical two-step inquiry.

with the request and "immediately notify" the requester of the decision. 5 U.S.C. § 552(a)(6)(A)(i). Under what has been deemed the "constructive exhaustion" provision, if an agency fails to respond to a request within the time limit, a requester "shall be deemed to have exhausted his administrative remedies." *Id.* § 552(a)(6)(C)(i). However, if the Government shows "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." *Id.*

Here, Plaintiff emailed his FOIA requests on December 21 and December 22, 2018. The NRC acknowledges that it received both requests on December 26, 2018. (Exhibit 3 to Declaration of Tina Ennis). Excluding weekends and holidays, 20 days after this date of receipt is January 25, 2019. The NRC sent a letter to Plaintiff on January 30, 2019.[3] The NRC does not address the reason for this late reply, nor does it point to any "exceptional circumstances" or evidence of its diligence that would explain the delay in responding to the requests.

But certain case law does not require exceptional circumstances in all cases, instead, only that the agency respond to the requester before suit is filed. The seminal case on the issue is *Oglesby v. United States Department of the Army*, 920 F.2d 57, 59 (D.C. Cir. 1990). The *Oglesby* court noted that under the statute, if an agency does not timely respond to a FOIA request, a requester's immediate recourse is to go to court to compel the agency's response. *Id.* (citing 5 U.S.C. § 552(a)(6)(C)).

---

[3] The Court finds the provision of section 552 requiring the agency to "immediately notify" the requester to be somewhat vague when read alone. If the NRC made its determination within 20 days of receipt, but sent a letter to Plaintiff 5 days later, is this sufficient? The Code of Federal Regulations clears up the issue. The Code provides that "the initial determination shall be made and notification thereof mailed within 20 [business] days . . . after the date of receipt of the request." 26 C.F.R. § 601.702(c)(9)(ii). This means that the agency must actually send its determination to the requester within the relevant 20-day time frame. *See Judicial Watch, Inc. v. Roseeotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) (noting the agency must "answer" the request within 20 work days). Therefore, even if the NRC argued that it made the determination within 20 days (which it did not), it is undisputed that nothing was mailed to Plaintiff within the statutory 20-day time frame. The NRC was late under any reading of the statute.

However, "once the agency responds to the FOIA request, the requester must exhaust his administrative remedies before seeking judicial review." *Id.* At least one other circuit agrees with this proposition. *See Pollack v. Dept. of Justice*, 49 F.3d 115, 118 (4th Cir. 1995) ("[W]hen an agency fails to comply in a timely fashion to a proper FOIA request, it may not insist on the exhaustion of administrative remedies, unless the agency responds to the request before suit is filed" (citation omitted)). The Ninth Circuit has not specifically addressed the issue. *See Allen v. IRS*, No. 03-cv-1698-PCT-FJM, 2004 WL 1638155, at *1 (D. Ariz. 2004). But at least one court in this circuit has followed *Oglesby*. *See Hersh & Hersh v. U.S. Dep't of Health & Human Servs.*, No. C 06-4234 PJH, 2007 WL 1411557, at *2 (N.D. Cal. May 11, 2007).

Here, Plaintiff did not file suit until March 2019, after Ms. Ennis emailed him to request payment for the '155 request and ask for clarification on the '154 request. The Court finds that the interests of judicial economy justify following *Oglesby* and the above case law. By the time Plaintiff filed his suit, he had been in communication with the NRC for a few months. And although the NRC initially responded to the request a few days late, the fact that Plaintiff continued to communicate with the NRC shows that it was possible for the parties to work the issue out amongst themselves before turning to the courts. This is the point of administrative exhaustion. As the *Oglesby* court put it,

> We believe that where a requester has chosen to wait . . . until [after] the agency has responded, Congress intended that the administrative route be pursued to its end. It did not mean for the court to take over the agency's decisionmaking role in midstream or to interrupt the agency's appeal process when the agency has already invested time, resources, and expertise into the effort of responding.

920 F.2d at 64. Congress did not intend "that this process could be superseded by judicial review solely because the initial agency response to the FOIA request was delinquent." *Id.* at 64 n.8. This is especially true here where it would have been easy and straightforward for Plaintiff to respond to the NRC, simply stating he did not

believe he was required to pay a fee or clarify his FOIA request. Instead, he turned to the court. The timeline of this process leads the Court to find that the NRC's untimely response does not mean Plaintiff is excused from the exhaustion requirement.

**B.** **Court Waiver of Exhaustion**

Exhaustion under FOIA is a jurisprudential consideration, rather than a jurisdictional one. *Yagman v. Pompeo*, 868 F.3d 1075, 1083 (9th Cir. 2017). Plaintiff requests that the Court waive the exhaustion requirement. (Opp'n at 17.) Generally, courts may waive exhaustion in cases where "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976). Plaintiff cites no cases where a court waived administrative exhaustion in a FOIA case.

The purpose of the exhaustion doctrine is to allow "the opportunity for the *agency* to exercise its discretion and expertise and the opportunity to make a record for the district court to review." *In re Steele*, 799 F.2d 461, 466 (9th Cir. 1986). Waiving exhaustion deprives the agency of this opportunity. *See Facebook Inc. & Subsidiaries v. I.R.S.*, No. 16-cv-5884-LB, 2017 WL 2630086, at *7 (N.D. Cal. June 19, 2017). When possible, agencies should be given a chance to fully analyze FOIA requests without court involvement. The Court disagrees with Plaintiff that the NRC was engaging in "stonewall tactics" and "apparently will not grant relief." (*See* Opp'n at 2, 17.) Instead, the NRC (although slightly delayed), began communicating with Plaintiff in an attempt to complete his requests. The Court declines to waive the administrative exhaustion requirement.

**C.** **Futility of Exhaustion**

Plaintiff next argues that if he did not exhaust, exhaustion of remedies would be futile. (Opp'n at 16.) A claimant can show futility of administrative review if he shows that "[r]equiring him to exhaust administrative remedies would not serve the

policies underlying exhaustion." *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). Specifically, courts are empowered to find futility where the claimant demonstrates that there is "nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise.'" *Id.* (quoting *Bowen v. City of New York*, 476 U.S. 467, 485 (1986)). "[T]he futility exception to the exhaustion requirement should not be applied where the agency has not had an opportunity to develop a record." *Joint Bd. of Control of Flathead, Mission & Jocko Irrigation Dists. v. United States*, 862 F.2d 195, 200 (9th Cir. 1988).

Plaintiff focuses on the merits of his FOIA requests in arguing that the NRC is a bad actor in this whole matter. This is irrelevant. The allegations of what the NRC is doing wrong (i.e. why Plaintiff requested documents through FOIA in the first place), is separate and apart from any evidence that Plaintiff should be permitted to evade administrative exhaustion. If Plaintiff is arguing the NRC is biased against him and his FOIA requests, this assertion is only speculation. *See id.* ("Administrative review is not futile if the plaintiff's allegations of bias are purely speculative."). As detailed above, the NRC began to develop a record and/or resolve Plaintiff's requests before Plaintiff filed suit, and Plaintiff has not shown that allowing the agency to continue to do so would be futile.

At last, the Court turns to the issue of whether Plaintiff exhausted administrative remedies for both FOIA requests.

### D. '155 Request

The NRC alleges Plaintiff's failure to pay the assessed fees constitutes a failure to exhaust administrative remedies for the '155 request. (Mot. at 4.)

Plaintiff's FOIA requests were placed in the category of "commercial use." (Exhibit 3 to Declaration of Tina Ennis.) Agencies are authorized to charge a "reasonable" amount "for document search, duplication, and review" when records are requested for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(i)–(ii). When an agency determines that a total fee "will exceed $250, it may require that the requester

make an advance payment up to the amount of the entire anticipated fee before beginning to process the request." 28 C.F.R. § 16.10(i)(2). When an advance payment is required, "the request shall not be considered received and further work will not be completed until the required payment is received. If the requester does not pay the advance payment within 30 calendar days after the . . . fee determination, the request will be closed." *Id.* § 16.10(i)(4). Because fees are used to process FOIA requests, administrative "exhaustion does not occur until the required fees are paid, or an appeal is taken from the government's refusal to waive fees." *Francis v. FBI.*, No. 1:06cv0968 AWI DLB, 2008 WL 1767032, at *6 (E.D. Cal. Apr. 16, 2008) (citing *Oglesby*, 920 F.2d at 66).[4]

Here, the NRC determined that the total fee for the '155 request was $563.60 and therefore it requested advance payment.[5] Ms. Ennis informed Plaintiff of this in an email sent on February 5. (Exhibit 4 to Declaration of Tina Ennis.) Plaintiff did not pay the fee, in fact, there is no evidence that Plaintiff responded to the February 5 email. He sent a letter to Ms. Ennis on February 8, but this letter does not address the sought fee. (Exhibit 5 to Declaration of Tina Ennis.) At oral argument, Plaintiff argued that he did not need to pay the fee because he had previously agreed to pay up to $1,500 for the request. (*See* (Exhibit 1 to Declaration of Tina Ennis.) In support of this argument, Plaintiff cited 9 C.F.R. § 9.40(e) which provides: "Unless a requester has agreed to pay the estimated fees or . . . the requester has paid an estimated fee in excess of $250, the NRC may not begin to process the request."

While it is true that Plaintiff agreed ahead of time to pay up to $1,500 in fees,

---

[4] Plaintiff argues that at the time the NRC requested fees, it was "already processing a FOIA request [by another requester] . . . regarding the same subject matter" and had waived the fee for that request. (Opp'n at 14.) Plaintiff argues the NRC therefore was improperly "attempting to charge Plaintiff for the search and review of documents it was already doing" for free. (*Id.*) This is a meritless argument, and Plaintiff cites no authority for the proposition that if the NRC waives one fee request, it must waive fees for all similar requests.

[5] The $563.60 includes both search and review fees. The Court has concerns as to whether the NRC may charge search fees in this case. *See* 5 U.S.C. § 552(a)(4)(A)(viii)(I). However, Plaintiff did not raise this argument in his briefing, so the Court does not analyze the issue here.

this does not mean that the NRC was not within its rights to request Plaintiff follow up on this assertion and have him pay the $563.60 before it began working on Plaintiff's request. As noted above, in certain situations an agency "may require that the requester make an advance payment . . . before beginning to process the request." 28 C.F.R. § 16.10(i)(2). When an advance payment is required, "the request shall not be considered received and further work will not be completed until the required payment is received. If the requester does not pay the advance payment within 30 calendar days after the . . . fee determination, the request will be closed." *Id.* § 16.10(i)(4). This regulation does not state that the agency cannot request an advance fee or that it must begin work on a request simply because the requester has broadly agreed beforehand to pay fees.

Plaintiff further argues that he exhausted his remedy for this FOIA request because he has already appealed the NRC's decision. (Opp'n at 14 (citing Exhibit 5 to Declaration of Tina Ennis (appeal letter).) However, as noted above, "exhaustion [of administrative remedies] does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees." *Oglesby*, 920 F.2d at 66. Plaintiff did not pay the fee and did not request the NRC waive the fee. He simply appealed what he called the "initial FOIA decision." In fact, no decision had been made. Plaintiff cites no authority for the premise that simply because he appealed his FOIA request (before a decision was made by the agency), he has sufficiently exhausted administrative remedies.

In sum, it is undisputed that Plaintiff did not pay the advance fee. He did not inform the NRC that he believed he was not required to pay that fee, nor did he request a fee waiver. Because he has not paid the required fee, he has not exhausted his administrative remedies. Therefore, the Court **GRANTS** the NRC's motion for summary judgment as to the '155 request.

E.    **'154 Request**

The NRC alleges that Plaintiff's failure to respond to the NRC's request for

clarification of the term "operations" constitutes a failure to exhaust administrative remedies for the '154 request. (Mot at 5.)

A proper FOIA request must "reasonably describe[ ]" the records sought. 5 U.S.C. § 552(a)(3)(A). Where the agency "would need to engage in quite a bit of guesswork to execute" the request, the request does not reasonably describe what is sought. *Yagman*, 868 F.3d at 1082. Further, "broad, sweeping requests lacking specificity are not permissible." *Id.* (quoting *Marks v. United States*, 868 F.3d 1075, 1081 (9th Cir. 2017)). However, to ensure a citizen's ability to retrieve documents under FOIA, federal agencies have a "duty of liberal construction" when interpreting and processing claim requests. *Id.* at 1080. "Liberal construction is warranted to achieve the core purpose of FOIA: allowing the public to find out '*what their government is up to*.'" *Id.* (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). Further, "a party's failure to perfect a request constitutes failure to exhaust administrative remedies." *Wright v. U.S. Dept. of Justice*, 379 F. Supp. 3d 1067, 1076 (S.D. Cal. 2019) (citing *Flowers v. IRS.*, 307 F. Supp. 2d 60, 66 (D.D.C. 2004).

Here, the NRC did not outright reject Plaintiff's request due to vagueness or overbreadth. Instead, Ms. Ennis emailed Plaintiff requesting he provide a simple clarification: pursuant to his use of the word "operations," was he requesting a narrower set of documents or a broader set? (*See* Exhibit 7 to Declaration of Tina Ennis.) The NRC was not attempting to block Plaintiff's ability to use FOIA or hide documents; instead, the NRC was attempting to avoid having to engage in "guesswork" in analyzing Plaintiff's request. Plaintiff could have simply responded to the email, and if he believed he was entitled to a broader set of documents, he could have said so. Instead, he filed suit.

At oral argument, Plaintiff argued that he did not need to respond to the February 14 email because he had sent a letter to the NRC on February 11, which he pointed to in the record as Exhibit 5 to Declaration of Tina Ennis. This referenced

exhibit is a letter dated February 8, and the Court sees no letter dated February 11. In any event, the Court does not find that the February 8 letter answers the question posed on February 14, or clarifies the '154 request in any way, such that it would have been unnecessary or duplicative for Plaintiff to respond to the February 14 email.

The Court is not hereby determining whether Plaintiff "reasonably" described the records in his FOIA request. Nor is the Court determining whether the NRC properly fulfilled its duty of "liberal construction." Instead, the Court finds that the sequence of events shows that Plaintiff failed to perfect his FOIA request. In *Wright*, Judge Burns analyzed a FOIA request and noted that whether the request was "impermissibly broad would normally be a close call." 379 F. Supp. 3d at 1077. However, the agency there had reached out to the plaintiff and requested clarifying information. The plaintiff did not respond. Judge Burns concluded, "[g]iven the opportunities given to [the plaintiff] to clarify his broad request and his failure to do so, [the agency] did not have an obligation to respond under the FOIA." *Id.* Judge Burns granted the agency's motion for summary judgment.

The Court agrees with this analysis. The NRC requested clarification, and Plaintiff did not respond, thus failing to perfect his request. Plaintiff responding to the email rather than filing suit would have avoided unnecessary court intervention. His actions evade the purpose of administrative exhaustion and he did not give the NRC a full opportunity to evaluate his request. "Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The "law does this by requiring proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.

2002)). Plaintiff here clearly did not utilize all steps that the NRC provided him. Doing so would have been extremely simple and would have served the purpose behind administrative exhaustion.

Therefore, the Court finds Plaintiff has not exhausted his administrative remedies for the '154 request. Plaintiff improperly filed suit before failing to perfect his request, and the Court **GRANTS** the NRC's motion for summary judgment for this claim.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment, (ECF No. 10). The Court also **DENIES** Defendant's Ex Parte Motion for Leave to File Supplemental Reply, (ECF No. 17). The Clerk is instructed to close the case.

**IT IS SO ORDERED.**

DATED: February 19, 2020

Hon. Cynthia Bashant
United States District Judge